Richard GREENE, Plaintiff,

v.

UNION PACIFIC RAILROAD CO., Defendant.

No. C80–40V.

United States District Court, W. D. Washington.

Nov. 30, 1981.

**4**

Mary Ruth Mann, Seattle, Wash., for plaintiff.

Wayne W. Hansen of Lane, Powell, Moss & Miller, Seattle, Wash., for defendant.

## MEMORANDUM OPINION

VOORHEES, District Judge.

From the credible evidence in this cause, the Court now renders the following decision.

The defendant in this cause is a common carrier operating in thirteen different states with thousands of employees in hundreds of different job categories.

■ All prospective employees, other than extra-gang laborers, are required to take and pass a physical examination as a condition to employment. Because many of the job categories are quite physically demanding, I find that, at least as to the physically-demanding job categories, the requirement of pre-employment physical examinations is justified by business necessity.

The defendant utilizes many different physicians in many different states to perform the required physical examinations. It is simply not possible for each of these physicians to become personally familiar with the physical requirements for each job category nor to know from personal experience those factors which would disqualify an individual for employment by defendant in a particular job category.

■ I find in consequence that it was reasonable for a defendant, through its medical director, to promulgate system-wide medical standards for those seeking employment with defendant and for those employees of defendant seeking transfer from one job category to another. I find that the medical director of the defendant did make a conscientious effort to formulate a set of job-related physical standards to be used by the defendant's examining physicians. Those standards were promulgated in defendant's revised Form 2501 "Physical Examination Rules". I find that the requirements set forth in that Form 2501 were intended by defendant to be, and that they were in fact, bona fide occupational qualifications. Those standards were established after a careful and extensive study by defendant's then-medical director, and the standards for each job category did bear a reasonable and necessary relationship to the work requirements of the job category in question and were in fact justified by business necessity. I find that these standards did not have a disparate impact upon a protected class.

I find that it was to the advantage of those seeking employment with defendant and of those seeking a transfer within the company for the defendant to have a uniform system-wide set of physical standards to guide the examining physicians rather than to leave to the unguided discretion of those physicians the determination as to whether a particular person was or was not physically qualified to perform the work of the job category in which he sought employment.

The use of such physical standards for the purpose of screening applicants for employ-

ment or for transfer is legal under *Rose v. Hanna Mining Company,* 94 Wash.2d 307, 616 P.2d 1229 (1980).

I find that the defendant rejected plaintiff's application for transfer into the management trainee program not because he was overweight but rather because he did not have in his background the education and the experience which defendant was at that time seeking in those whom it wished to place in its management training program.

I find that the defendant did not grant plaintiff's request for transfer to the fireman job category by reason of a combination of three factors relating to his physical condition:

1. He was very much overweight.
2. His blood pressure was borderline hypertensive.
3. He had advanced osteoarthritis of the spine.

I find that defendant could reasonably believe and that it did in fact believe that an applicant with that combination of physical conditions would be less apt to be an efficient, safe, illness-free, and claims-free employee than one not having those conditions. I find that a person with plaintiff's weight and blood pressure would be significantly more apt to suffer a heart attack or a stroke than one not having those conditions. The fact that physicians refer to the condition of being overweight in excess of one hundred pounds as "morbidly obese" leads the Court to believe, and it so finds, that the longevity of one who is overweight to the extent that plaintiff was overweight at the time of his application for transfer to fireman is significantly and adversely affected by that condition of overweight.

I find that because of the nature of the work of a fireman and particularly that of an engineer, the defendant was under a business necessity to consider the probable effect of plaintiff's weight, his blood pressure and his osteoarthritis upon the likelihood of his being able to perform the work that he would be called upon to perform with safety toward himself, toward his fellow employees, toward the general public, and toward the equipment which would be placed in his charge.

I find that neither plaintiff's borderline hypertension nor his back condition was a handicap within the contemplation of the Washington laws against handicap discrimination as neither of these conditions seemed to interfere with plaintiff's normal day-to-day activities.

If one were to assume that the condition of being "morbidly obese" was in fact a handicap within the contemplation of Washington laws against handicap discrimination and the regulations promulgated thereunder, I find that plaintiff was not discriminated against by reason of his condition of being "morbidly obese" because I find that the height-weight requirements of defendant were a bona fide occupational qualification for the job category of fireman.

I find, however, that plaintiff was not handicapped within the contemplation of the Washington statutes and the regulations promulgated thereunder by reason of his obesity because plaintiff's obesity was not an immutable condition such as blindness or lameness. His weight varied. It was sometimes up, sometimes down. It seemed to vary according to the motivation that he had for controlling his weight. The condition of "morbid obesity" is by definition the condition of being in excess of one hundred pounds over the normal weight of one with a medium frame. The evidence indicates that plaintiff was by this definition at times "morbidly obese" but was at other times not "morbidly obese."

I find further that there is no credible evidence that plaintiff was the victim of retaliation by defendant, or that he was the victim of outrageous conduct on the part of defendant, or that he was caused emotional distress, embarrassment or mental suffering by the conduct of defendant.

This Memorandum of Opinion will be in lieu of formal findings of fact and conclusions of law.

The Clerk is directed to enter judgment dismissing with prejudice the complaint of plaintiff.